Nos. 2022-2050 and 2022-2051

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### RUTH A ETZEL,
*Petitioner,*

v.

### ENVIRONMENTAL PROTECTION AGENCY,
*Respondent*

———————————————

Petition for Review of the Merit Systems Protection Board
In No. DC-1221-19-0827-W-2

----------------------------------

### RUTH A ETZEL,
*Petitioner,*

v.

### MERIT SYSTEMS PROTECTION BOARD,
*Respondent*

———————————————

Petition for Review of the Merit Systems Protection Board
In No. DC-3443-21-0391-I-1

### REPLY BRIEF OF PETITIONER

Paula Dinerstein
Peter Jenkins
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
Phone: (202) 265-7337

Counsel for Petitioner, Ruth A. Etzel

April 4, 2023

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ i

TABLE OF AUTHORITIES ...................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT............................ 1

ARGUMENT.................................................................... 3

   I.   DR. ETZEL'S DISCLOSURES IN HER OCTOBER 2018 TELEVISION APPEARANCES ARE PROTECTED ........................................ 3

   II.   DR. ETZEL HAD A REASONABLE BELIEF THAT HER INVESTIGATIVE LEAVE WAS ILLEGAL........................................11

   III.  THE PROTECTED DISCLOSURE CONCERNING THE ILLEGALITY OF THE PAY REDUCTION WAS A CONTRIBUTING FACTOR TO THE FAILURE TO PROVIDE DUTIES AT THE OFFICE OF WATER   16

   IV.  IT WAS AN ABUSE OF DISCRETION TO DENY DR. ETZEL'S MOTION TO COMPEL DISCOVERY AS UNTIMELY. ..................................19

   V.   THE BOARD HAD JURISDICTION OVER THE PAY REDUCTION APPEAL.................................................................21

   CONCLUSION ........................................................23

   CERTIFICATE OF COMPLIANCE .........................................25

TABLE OF AUTHORITIES

**Cases**

*Amato v. Dep't of the Army*, 193 F. App'x 957 (Fed. Cir. 2006) .............................18

*Banks v. United States*, 741 F.3d 1268 (Fed. Cir. 2014)........................................20

*Beck v. Dep't of the Navy*, 997 F.3d 1171 (Fed. Cir. 2021)....................................18

*Bieber v. Dep't of the Army*, 287 F.3d 1358 (Fed. Cir. 2002) ................................18

*Briley v. National Archives & Records Admin.*, 236 F.3d 1373 (Fed. Cir. 2022) ....14

*Chambers v. Dep't of Interior*, 602 F.3d 1370 (Fed. Cir. 2010)...................... 6, 8-10

*McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594

(MSPB 2011) ................................................................................................ 7

*Mount v. U.S. Dep't of Homeland Sec.*, 937 F.3d 37 (1st Cir. 2019)......................12

*Porzillo v. HHS*, 369 F. App'x 123 (Fed. Cir. 2010)..............................................18

*Schmittling v. Department of the Army*, 92 M.S.P.R. 573 (MSPB 2002).............. 6-7

*Shibuya v. Dep't of Agric.*, 2022 MSPB LEXIS 1156 (M.S.P.B. March 31, 2022) .20

*Siler v EPA*, 908 F.3d 1291 (Fed. Cir. 2018).........................................................20

*Ward v. MSPB*, 981 F2d 521 (Fed. Cir. 1992).......................................................14

*White v. Dep't of the Air Force*, 71 M.S.P.R. 607 (M.S.P.B. 1996) .......................20

*Whitmore v. Dep't of Labor*, 680 F.3d 1353 (Fed. Cir. 2012) .................... 18, 19, 21

**Statutes**

5 U.S.C. § 2302 ................................................................................................ 7

5 U.S.C. § 6392b...............................................................................................12

5 U.S.C. § 6329b(b) ……………………………………………………16

5 U.S.C. § 6329b(c) and (d)…………………………………………… . 12

### Regulations

5 C.F.R. § 534.404 ..........................................................................................22

## INTRODUCTION AND SUMMARY OF ARGUMENT

As the Director of the Office of Children's Health Protection from 2015 to 2019, Dr. Etzel held the leading position dedicated to children's health at the Environmental Protection Agency (EPA). One of her principal efforts was to lead the EPA and seventeen federal agencies and offices in the creation of a new Federal Lead Strategy to protect children from the dangers of exposure to lead. In early 2018, Dr. Etzel was told by EPA's National Lead Coordinator that he believed that the Office of the Administrator did not want the Federal Lead Strategy to contain any enforceable measures to remove the lead from children's environments. Around that time also, the Lead Strategy stalled and Dr. Etzel was not permitted to brief EPA leadership to move it forward. When she was then put on administrative leave without any warning or explanation, she reasonably believed she was being sidelined to get her out of the way while Lead Strategy was abandoned entirely or issued in a watered down, ineffective form. So she went on two national television programs to warn the public that this was happening and that EPA was dropping the ball on protecting their children from lead poisoning. Her disclosures on those television programs revealed a "specific and substantial danger to public health" and were protected under the Whistleblower Protection Act.

Dr. Etzel also disclosed in her complaint to the Office of Special Counsel, as well as in several communications with EPA legal and human relations staff, that

her placement on administrative and then investigative leave was illegal for failure to comply with the Administrative Leave Act of 2016. This was both because the Act had not been implemented with regulations as required in the Act, and because her leave had extended more than the 30 workdays permitted under the Act. Dr. Etzel had a reasonable belief in these disclosures based on the fact that regulations had not been issued and that more than 30 workdays had elapsed, and thus this disclosure is also protected.

The Administrative Judge found that one of Dr. Etzel's disclosures was protected, where she disclosed that the ten per cent reduction in her pay violated applicable regulations. However, the judge found that this disclosure was not a contributing factor in any adverse personnel action because the only personnel action set for hearing that post-dated this disclosure did not actually occur. Dr. Etzel had alleged that when she was transferred to EPA's Office of Water, she was given far less than full-time work and the work she was given was not suitable for her qualifications and experience. The Administrative Judge erred in only considering the testimony of Dr. Etzel's first supervisor at the Office of Water and not Dr. Etzel's contrary testimony to determine that Dr. Etzel was given meaningful and plentiful work.

The Administrative Judge also erred in denying Dr. Etzel's motion to compel discovery responses based on timeliness even though the prior administrative judge

had granted an extension to the date that she filed the motion. Because Dr. Etzel was deprived of the opportunity to possibly obtain a large amount of evidence to support her case, this was an abuse of discretion that was both clear and harmful.

Finally, the MSPB's decision that it lacked jurisdiction over Dr. Etzel's pay reduction appeal ignores the fact that EPA violated and manipulated the statute and regulations in order to claim that her pay was reduced while she was still a Senior Executive Service employee, and therefore the Board lacked jurisdiction. EPA should not be permitted to evade review by this dishonorable scheme.

## ARGUMENT

### I.     DR. ETZEL'S DISCLOSURES IN HER OCTOBER 2018 TELEVISION APPEARANCES ARE PROTECTED

Dr. Etzel disclosed substantial and specific dangers to public health in her two October 2018 national television appearances concerning the dangers of lead poisoning that children were facing due to EPA's failure to issue a strong Federal Lead Strategy to remove the lead from children's environments. As the Initial Decision (ID) recognized, "The health perils of lead are unquestionable, particularly its effect on children's health." Appx29. Yet, the ID found that Dr. Etzel did not disclose any substantial and specific danger because she purportedly did not make specific allegations about EPA's policies or actions, and did not reveal a specific impending harm because she "failed to establish any quantifiable potential harm or likelihood of harm." Appx30.

Dr. Etzel demonstrated in her Opening Brief that she had a reasonable belief in her disclosure of the ongoing harm to children from lead exposure due to EPA's delay in issuing the Federal Lead Strategy and the agency's intention to water it down so that it did not contain any enforceable measures to actually get the lead out of children's environments. She reasonably believed that she had been placed on administrative leave to prevent her, as the co-leader of the Lead Strategy, from advocating for and working towards an effective Strategy.  As a result, she needed to speak directly to the nation's parents about the peril that EPA was failing to address. The concerns she expressed in her television appearances that EPA would not take effective action once she was removed from her position and her work on the Federal Lead Strategy were proven right when the Lead Action Plan was released months later with no timelines or deliverables for actually removing lead from the air, water and dust in children's homes. Etzel Opening Br. 12-13. 18-22.[1]

The Opening Brief further demonstrated how the ID misinterpreted and misapplied the standards for substantial and specific dangers to public health by requiring Dr. Etzel to provide "quantifiable potential harm," and by failing to apply governing case law that required consideration of the likelihood of harm, when it

---

[1] Citations to the Etzel Opening Br. are to the "Corrected Opening Brief of Petitioner," Doc. 20. The page numbers refer to the page numbers in the brief, not the page numbers in the Court's header.

might occur, and the nature (seriousness) of the harm, all of which favor a finding that the disclosures here are protected. Etzel Opening Br. 23-29.

EPA's Brief fails to rebut these arguments. EPA truncates the actual disclosures, making them appear more like a mere policy dispute or, as the AJ characterized it, a "nebulous worry," Appx30, than a warning of a public health danger. EPA claims that Dr. Etzel "raised only vague concerns" that the government had no intention of taking action to change lead in children's environments and did not specifically warn about the dangers to children from ongoing lead exposure. EPA Br. 38-39.[2] EPA ignores the documentary evidence and testimony concerning Dr. Etzel's television appearances, *see* Opening Brief 19-20, where she stated that she was speaking out to the nation's parents about the dangers of lead in their children's environments because EPA had silenced her by placing her on administrative leave, and that as a result of EPA's inaction, lead hazards in the environment continued unabated. Appx1607-10, 3256-57.

EPA argues that Dr. Etzel did not disclose any specific and substantial danger because all she was complaining about was that EPA issued the Lead Strategy (which became instead a Lead Action Plan without timelines or deliverables, Appx3125-26, 3672) in December instead of September 2018. EPA

---

[2] Citations to EPA Br. are to the "Corrected Brief of Respondent Environmental Protection Agency," Doc. 31. The page numbers refer to the page numbers in the brief, not the page numbers in the Court's header.

claims that this was a mere "general disagreement with EPA policy and prioritization." EPA Br. 44-45. EPA then argues at length that this delay in issuing the Lead Action Plan was justified. EPA Br. 44-47. This entire discussion is a red herring that ignores the fact that at the time Dr. Etzel made her disclosures in October 2018, she did not know that any Federal Lead Strategy would be issued at all, and feared, it turned out rightly, that any Strategy that was issued would be watered down to eliminate any new regulations or required actions to get lead out of children's environments. Dr. Etzel's disclosures were *not* a disagreement about a three-month delay in issuing the Lead Strategy.

Even if her disclosures could be characterized as policy disagreements, that would not disqualify them from whistleblower protection. As this Court stated in *Chambers v. Dep't of Interior*, "the fact that a particular health or safety statement involves a policy decision or disagreement does not deprive it of protection under the WPA [Whistleblower Protection Act]." 602 F.3d 1370, 1376 (Fed. Cir. 2010).

EPA further ignores the fact that Dr. Etzel was expressing her opinion, as an expert, that the agency's inaction would harm children (whom she had committed her career to protecting). The agency's rebuttal of the importance of Dr. Etzel's expertise to the protected nature of her disclosures is weak. EPA Br. 42-43. EPA attempts to distinguish two cases on this issue that Dr. Etzel cited in her Opening Brief, *Schmittling v. Department of the Army*, 92 M.S.P.R. 573 (MSPB 2002) and

*McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594 (MSPB 2011). EPA claims, "The particularized and significant disclosures in *Schmittling* and *McCarthy* are thus distinguishable from the generalized disclosures raised in Dr. Etzel's appeal." EPA Br. 43. However, EPA is comparing apples to oranges. The disclosures in those cases were claimed violations of law under 5 U.S.C. § 2302(b)(8)(A)(i), and thus their acceptance as protected has no bearing on whether Dr. Etzel's disclosures met the separate and distinct definition of a "substantial and specific danger to public health" in § 2302(b)(8)(A)(ii). *Schmittling* at ¶¶6-8; *McCarthy* at ¶ 37.

Schmittling was an Army accountant who disclosed improper overhead billing practices by the Tank-Automotive and Armaments Command. McCarthy was a government attorney who disclosed his agency improperly issued a bid solicitation for construction of a levee. Their disclosures were accepted because they alleged violations of law, and so it did not matter that their significance and impact was far less than Dr. Etzel's disclosures of a widespread threat to public health from EPA's failure to address children's lead exposure.

Dr. Etzel did not cite these decisions to compare the disclosures in those cases to hers, but to support her argument that her expertise should be considered in determining the reasonableness of her belief that she was disclosing a protected matter. The Federal Circuit's opinion in *Chambers* exactly confirms her point,

stating that Chambers' "expertise in these matters supports the reasonableness of her belief." 602 F.3d at 1379. EPA does not even address the actual argument Dr. Etzel made, as it is inarguable that Dr. Etzel possessed the expertise to support her belief that EPA's failure to act to protect children from lead exposures was a substantial and specific danger to public health.

EPA's only argument that Dr. Etzel did not have a reasonable belief is in its long discourse claiming that she could not have had a reasonable belief that she was disclosing a specific and substantial danger to public health because her disclosure was only about a three-month delay in issuing the Lead Strategy, and that delay was justified. EPA Br. 43-48. As described above, this discussion has nothing to do with the facts of this case, where the disclosure was not focused on "how quickly EPA should implement the Federal Lead Action Plan," EPA Br. 48, but on EPA's failure to promulgate any Plan that actually removed the lead from children's environments.

Further, EPA ignores that the Administrative Judge's ruling failed to directly consider Dr. Etzel's expertise in relation to her disclosure. Instead, he patronizingly dismissed her national television statements on unaddressed lead poisoning of children as expressing a "nebulous worry." Appx30.

EPA also does not adequately rebut Dr. Etzel's arguments that the Administrative Judge erred by adhering to his test that her assertions: "failed to

establish any *quantifiable* potential harm or likelihood of harm." Appx30
(emphasis added). Even assuming a whistleblower would ever be required to
quantify the harm from a "substantial and specific danger to public health," plainly
the Court would need to review the context in which the disclosure is made to
determine the extent to which the harm *is* reasonably quantifiable. In the public
health context, as here, the risks to society as a whole are so broad that they are not
typically quantifiable to the extent that risks may be in more limited health or
safety circumstances.

　　The Administrative Judge's pointing to a lack of quantifiable harm was
inconsistent with *Chambers*, which does not require quantifiable harm in order to
constitute a protected disclosure. EPA rightly cites the *Chambers* test as the
appropriate one, but it makes an important mischaracterization of the actual facts
of Chambers' disclosure in its attempt to distinguish it. EPA Br. 37-38.

　　EPA claims Chambers "identified a *measurable* increase in traffic accidents
as a result of reduced police presence." *Id.*, at 38 (emphasis added). But nowhere is
any measure of increased accidents identified in that case. Instead, the Court
discussed the fact that it was reasonable to assume that a reduction in the number
of police on patrol would lead to more accidents, that in fact it had already
occurred, and that the reasonableness of Chambers' beliefs that traffic accidents
present a substantial danger and that the diversion of Park Police from the

Baltimore-Washington Parkway was the cause of the increase in traffic accidents was supported by her expertise in public safety and familiarity with the areas under her jurisdiction. *Chambers*, 602 F.3d at 1379.

As with Dr. Etzel's disclosures here, it was concern about the increased safety risk based on her professional judgment that Park Police Chief Chambers spoke to; she did not give a measure of the increased accident risk. But ultimately increased accidents are measurable just as increased childhood lead poisonings are measurable; both, of course, *after the fact*.

To weigh the Administrative Judge's and the EPA's "quantifiable" harm standard, the Court can examine this analogous public health hypothetical, which is based on reported stories from Wuhan, China, related to the beginnings of the SARS-COVID-2 pandemic:

If a Chinese public health expert were to warn of a central government cover-up of a major risk to society from an emerging infectious disease, but the scientist was unable to quantify the risk, then the government's actions would not amount to stifling of a whistleblower seeking to make a protected disclosure under EPA's test. Following EPA's logic, that scientist would have simply been in a "policy dispute" with the central government.

Obviously in the worldwide pandemic example the stakes are extremely magnified, but the risk of childhood lead poisoning, causing lifetime mental

disabilities and reduced IQs, also is a very serious health risk, as the ID

acknowledged was "unquestionable." Appx29. In the Chinese scientist example,

had the central government acted on the whistleblower's disclosures instead of

retaliating against him for making them, there is a chance the COVID 19 pandemic

could have been reduced in scope. Similarly, had EPA acted on Dr. Etzel's

television and other warnings rather than retaliating against her for them and

sidelining her, she would have remained as the Director of the Office of Children's

Health Protection and in a far better position to reduce childhood lead poisoning,

including pushing for a stronger Federal Lead Strategy.

　　In conclusion, Dr. Etzel's disclosures in her October 2018 television

appearances were protected whistleblower disclosures of a substantial and specific

danger to public health and safety. As shown in her Opening Brief, they were a

contributing factor in all of the accepted personnel actions in this case, and

therefore entitle her to a hearing in which EPA must prove by clear and convincing

evidence that it would have taken the same actions in the absence of these

disclosures. Etzel Opening Br. 29-30.

## II.　　DR. ETZEL HAD A REASONABLE BELIEF THAT HER INVESTIGATIVE LEAVE WAS ILLEGAL

　　The ID found that Dr. Etzel's disclosure that her investigative leave was

illegal was not protected because she could not have had a reasonable belief in that

claim. Appx31-33. First, the ID found she could not have had a reasonable belief

that the leave was illegal because it extended more than 30 workdays, because the disclosure was made before 30 workdays had elapsed. Appx32.[3] Second, the ID found she did not have a reasonable belief in her claim that the leave was illegal because EPA had not issued regulations implementing the Administrative Leave Act of 2016, because "the Act does not preclude agencies from placing employees on investigative leave prior to the issuance of regulations or policy." Appx32 (footnote omitted). EPA's defenses of those holdings are unavailing.

In response to Dr. Etzel's contention that she in fact did disclose the illegality of her investigative leave due to its duration after more than 30 workdays, Etzel Opening Br. 31-32, EPA argues that those disclosures were not brought to Office of Special Counsel (OSC), and therefore she did not exhaust her administrative remedies and cannot raise that claim before this Court. EPA Br. 49.[4] However, the factual premise for this argument is simply incorrect. In her OSC Complaint, Dr. Etzel made the specific claim that "even if that statute [the Administrative Leave Act of 2016, 5 U.S.C. § 6392b(b)] were in effect, EPA has

_____

[3] The ID also found that even if Dr. Etzel had protested the duration of her leave after 30 workdays, she still did not show a reasonable belief in its illegality because she presented no evidence regarding whether EPA complied with the statutory provisions for extending investigative leave at 5 U.S.C. § 6329b(c) and (d). Appx32, n. 12. Dr. Etzel responded to this finding in the ID in her Opening Br. 32-34, and EPA's brief does not address it.

[4] A claim of failure to exhaust administrative remedies is a legal issue reviewed *de novo*. *Mount v. U.S. Dep't of Homeland Sec.*, 937 F.3d 37, 45 (1st Cir. 2019).

violated the statute by leaving Dr. Etzel on investigative leave well past the 30 day

investigative leave period the statute authorizes." Appx103, ¶33. Thus, this Court

does have jurisdiction over the disclosure that Dr. Etzel's investigative leave was

illegal for exceeding the 30 workdays allowed by the statute.

Moreover, the fact that this claim was raised in the OSC complaint also

rebuts he ID's conclusion that Dr. Etzel could not have had a reasonable belief that

her investigative was illegal for exceeding 30 workdays because she made the

claim before 30 workdays had elapsed. Appx31-33; EPA Br. 50-52. The OSC

complaint was filed on November 28, 2018, Appx114, more than 30 workdays

after Dr. Etzel was placed on investigative leave on October 9, 2018. (The 30

workdays ended November 20, 2018). Appx466. Therefore, Dr. Etzel had a

reasonable belief at the time she filed with OSC that her investigative leave was

illegal for exceeding 30 workdays.

Dr. Etzel also made the disclosure that her leave was illegal for exceeding 30

workdays again on December 19, 2018, Appx1456, and December 21, 2018,

Appx1479, when Dr. Etzel's counsel wrote to EPA personnel claiming that her

investigative leave was illegal both because the implementing regulations had not

been promulgated and because the leave had exceeded 30 workdays. *See* Etzel

Opening Br. 31-32. These communications were placed in the record before the

Board, both as exhibits and in Dr. Etzel's hearing testimony. The December 19,

2018, letter, App1456, is Appellant's Ex. Y and the December 21, 2018, letter, App1479, is Appellant's Ex. RR. Dr. Etzel also testified concerning the December 19 communication. Appx3221-3222. This evidence should have been considered by the Administrative Judge and should have precluded a finding that Dr. Etzel did not have a reasonable belief in her disclosure about the illegality of her investigative leave based on its duration because she only made that disclosure before 30 workdays had elapsed.

While these later communications were not in her OSC complaint, and in fact post-dated it, the OSC exhaustion requirement does not mean that the employee cannot provide additional information supporting her claims before the Board. *See Ward v. MSPB*, 981 F2d 521, 526 (Fed. Cir. 1992) (exhaustion requires only that the employee give the OSC sufficient basis to pursue an investigation that might lead to corrective action); *Briley v. National Archives & Records Admin.*, 236 F.3d 1373, 1378 (Fed. Cir. 2022) (employee may give a more detailed account of her whistleblowing before the administrative judge; exhaustion requires only that she provide OSC "the core of [her] retaliation claim"). Dr. Etzel clearly provided the OSC with "the core of her retaliation claim," that she was retaliated against for, among other things, disclosing that her administrative leave was illegal for exceeding the 30 days provided in the Administrative Leave Act.

Thus, Dr. Etzel exhausted her administrative remedies with regard to her claim that her investigative leave was illegal because it extended beyond 30 workdays, and demonstrated a reasonable belief in a violation of law because her leave had in fact extended beyond 30 workdays at the time she made the disclosure. The Administrative Judge ignored evidence in the record, including the OSC complaint itself, that unmistakably demonstrated these points. His decision on this matter was not supported by substantial evidence.

EPA's argument in support of the ID's finding that Dr. Etzel did not have a reasonable belief that her administrative leave was illegal because no implementing regulations for the Administrative Leave Act had been promulgated fares no better. Even assuming that this basis for Dr. Etzel's belief in the illegality of her investigative leave was not reasonable, she would still have a reasonable belief in a violation of law based on the exceedance of 30 workdays. However, while unnecessary to support her case, she had a reasonable belief in both bases for a statutory violation. Attempting to show that Dr. Etzel did not have a reasonable belief, EPA provides its own legal analysis of the effect of the failure to meet the statutory requirement to promulgate regulations that was not relied upon by the Administrative Judge. EPA argues that if the Administrative Leave Act was not in effect due to the failure to promulgate regulations, EPA would have much broader discretion to place employees on paid leave without the restrictions in the Act, and

thus there could be no basis for a reasonable belief that Dr. Etzel's leave was illegal. EPA Br. 52-53.

However, the fact is that EPA relied on and acted under the Administrative Leave Act when placing Dr. Etzel on investigative leave and recognized the need to comply with its restrictions. EPA stated, "In accordance with 5 U.S.C. § 6329b(b), when the 10 work-day period of administrative leave expires, you will be on investigative leave." Appx466. EPA recognized that the investigative leave could only last "for up to 30 work days" under the statute and that "at the conclusion of the investigative leave period," further "appropriate action" needed to be taken. *Id*. EPA purported to be acting under the authority of the Act, and Dr. Etzel made a perfectly reasonable assumption that EPA was acting illegally if it did not comply with that authority.

III. THE PROTECTED DISCLOSURE CONCERNING THE ILLEGALITY OF THE PAY REDUCTION WAS A CONTRIBUTING FACTOR TO THE FAILURE TO PROVIDE DUTIES AT THE OFFICE OF WATER

The ID found that Dr. Etzel's disclosure concerning the regulatory violation stemming from the implementation of her pay reduction prior to providing an opportunity to request reconsideration was a protected whistleblower disclosure. Appx33-34. It nevertheless found it was not a contributing factor in a covered personnel action, essentially because the failure to provide appropriate duties at the Office of Water, the only personnel action set for hearing that occurred after this

disclosure, did not actually occur. The ID found instead that Dr. Etzel was provided appropriate duties. Appx34-35.

While the ID discussed only Ms. Nagle's purported testimony that Dr. Etzel was given "meaningful and plentiful work" at the Office of Water, Appx35, and entirely ignored Dr. Etzel's contrary testimony, EPA argues that the administrative judge is simply "presumed" to have considered all the evidence. EPA Br. 54-55.[5] However, the question is not merely whether the Administrative Judge "considered" the evidence, but whether his decision fully evaluates all of the evidence on both sides of a question and justifies the conclusions reached.

> In many instances, our review of whistleblower appeals turns on whether substantial evidence exists to support the judgment of the MSPB. However, we are unable to make such determinations if the MSPB fails to provide an in depth review and full discussion of the facts to explain its reasoning. Such a complete evaluation of the facts is necessary in every case because outside of written opinions and transcribed oral statements, we have no basis to discern the reasoning of the MSPB and decide whether there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Massa v. Dep't of Def.*, 815 F.2d 69, 72 (Fed. Cir. 1987) (internal quotation marks omitted). If considerable countervailing evidence is manifestly ignored or disregarded in finding a matter clearly and convincingly proven, the decision must be vacated and remanded for further consideration where all the pertinent evidence is weighed.

_____

[5] As noted in the Etzel's Opening Br., Ms. Nagle did not actually testify that Dr. Etzel was given "plentiful" work, and in fact acknowledged that Dr. Etzel regularly asked for more challenging work assignments. Ms. Nagle stated in her performance evaluation that "Ruth has the capacity and is eager for more work." Etzel Opening Br. 37, citing Appx2985, Appx1507.

*Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The four-sentence discussion of this issue in the ID, which ignores all the countervailing evidence, does not meet this standard. *See also Beck v. Dep't of the Navy*, 997 F.3d 1171, 1182, 1184 (Fed. Cir. 2021) (determination in one conclusory paragraph based only on one person's testimony was an abuse of discretion).

The cases cited by EPA are not to the contrary. In *Amato v. Dep't of the Army*, 193 F. App'x 957, 959 (Fed. Cir. 2006) (per curiam) (unpublished), the court upheld the administrative judge's decision because he analyzed the trial testimony and written statements of *each witness* as well as the documentary evidence of record. Here, the judge ignored Dr. Etzel's testimony on this point. In *Porzillo v. HHS*, 369 F. App'x 123, 132 (Fed. Cir. 2010), this Court found the administrative judge's decision supported by substantial evidence where the judge had cited "extensive documentary and testimonial evidence." That was not the case here on this issue. *Bieber v. Dep't of the Army* upheld the administrative judge's findings of fact because they rested in substantial part on credibility determinations. 287 F.3d 1358, 1364 (Fed. Cir. 2002). Here, while the judge did find Ms. Nagle to be a credible witness, Appx35, he made no credibility finding concerning Dr. Etzel, and thus had no basis to credit Ms. Nagle's testimony over hers.

In sum, the ID's determination that there was no covered personnel action regarding Dr. Etzel's duties at the Office of Water is not supported by substantial

evidence and "manifestly ignored or disregarded" "considerable countervailing evidence." *Whitmore*, 680 F.3d at 1368. It cannot stand.

IV.    IT WAS AN ABUSE OF DISCRETION TO DENY DR. ETZEL'S MOTION TO COMPEL DISCOVERY AS UNTIMELY.

The denial of Dr. Etzel's motion to compel as untimely when the previous Administrative Judge had granted her request to file the motion on that date is the essence of an abuse of discretion. Contrary to EPA's claim, the abuse of discretion was both "clear and harmful." *See* EPA Br. 58-60. The judge arbitrarily deprived Dr. Etzel of the opportunity to obtain a highly significant amount of additional evidence that could be useful to her case – 331 withholdings of documents or portions of documents based on claims of privilege. Appx616-715.[6]

---

[6] EPA implies that Dr. Etzel cannot now address the harmfulness of the error here because she did not do so in her Opening Brief. EPA Br. 59. However, the issue of the Administrative Judge's error in denying the motion to compel was the subject of well-developed argument in the Opening Brief, Etzel Opening Br. 39-42, and the argument in this Reply Brief is directly responsive to EPA's brief on the subject. *See e.g. United States v. Franco-Lopez*, 312 F.3d 984, 993 n.6 (9th Cir. 2002) ("This court may consider claims not raised by appellant's opening brief but raised by the appellee's brief." (citation omitted)); *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1106, n. 14 (9th Cir. 2003) (refusing to strike arguments raised in a reply brief because they were a reasonable response to points made in the answering brief). The primarily reason for the rule that new issues may not be raised in a reply brief is that it deprives the appellee of the opportunity to respond to them, "transgressing the canons of fair forensics." *Ellingson v. Burlington Northern., Inc*., 653 F.2d 1327, 1332 (9th Cir. 1981). Here, the unfairness would be to Dr. Etzel, who would be deprived of the opportunity to address an argument made in EPA's brief.

The denial of the motion to compel on timeliness grounds when the previous Administrative Judge had already approved the time of filing also runs afoul of the law-of-the-case doctrine that "encourages both finality and efficiency in the judicial process by preventing relitigation of already-settled issues." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (citation omitted). The doctrine "limits relitigating an issue that already was decided in a different stage of the same litigation." *Shibuya v. Dep't of Agric.*, 2022 MSPB LEXIS 1156, *12-13 (M.S.P.B. March 31, 2022) (citation omitted); *accord White v. Dep't of the Air Force*, 71 M.S.P.R. 607, 614 (M.S.P.B. 1996).

Because the documents were withheld, we cannot know with certainty how they might have affected the outcome of the case, but this does not preclude the grant of relief. In a similar situation where withholdings on the ground of privilege were found to be unjustified, this Court stated, "we cannot say that the Board's refusal to consider the drafts could not have impacted the outcome of …[the] appeal," and reversed the Board and remanded for the employee to receive the withheld documents. *Siler v EPA*, 908 F.3d 1291, 1298 (Fed. Cir. 2018). In another situation where the content of proposed testimony that was not permitted was unknown, this Court found an abuse of discretion in the exclusion of witnesses sought by the employee. "Doing so prevents whistleblowers from effectively presenting their defenses, and leaves only the agency's side of the case in play. This

can have a substantial effect on the outcome of the case, and so constitutes harmful error." *Whitmore*, 680 F.3d at 1370.

Thus here, the denial of Dr. Etzel's motion to compel the production of 331 partially or fully withheld documents without considering the merits of the motion, based on a faulty conclusion of lack of timeliness, is a clear and harmful abuse of discretion. This Court should order consideration of the motion on remand.

## V.    THE BOARD HAD JURISDICTION OVER THE PAY REDUCTION APPEAL

In the pay reduction appeal, the Board claims that Dr. Etzel has not even made a nonfrivolous allegation of jurisdiction that would entitle her to a hearing, solely because she was purportedly not in the Senior Executive Service (SES) when her pay was reduced. The Board does not seriously dispute Dr. Etzel's claim that the short extension of her SES detail was a sham, implemented for the very purpose of being able to claim to reduce her pay under SES regulations. Rather, the Board only claims that the agency's motivation is irrelevant. MSPB Br.

12.[7] Nor does the Board dispute that the proceeding to reduce Dr. Etzel's pay was not concluded until November 20, 2019, when the designee for the agency head denied her request for reconsideration. *Id.* at 13. Yet, it claims that because

---

[7] Citations are to the "Brief for Respondent Merit Systems Protection Board," Doc. 28. The page numbers refer to the page numbers in the brief, not the page numbers in the Court's header.

the agency actually began to pay her at a lower rate in May 2019, that is the date that matters for the determination that her pay was reduced while she was still in the SES, thus depriving the Board of jurisdiction, even if reducing the pay at that time was in violation of the regulation at 5 C.F.R. § 534.404 (j)(3). *Id.* Finally, the Board claims that the agency's failure to comply with the regulations for SES pay reductions cannot confer jurisdiction to appeal the reduction. MSPB Br. 14-15.

In other words, the Board asks this Court to sanction EPA's scheme to reduce Dr. Etzel's pay by the subterfuge of extending her detail when she had already been assigned to a GS-15 position and transferred to the office where she would assume that position, so it could purportedly reduce her pay under SES regulations (the only way it could do so based on an unsatisfactory performance evaluation), but not comply with the SES regulation that requires pay retention when someone is demoted out of the SES. *See* Etzel Opening Br. 42-45. Dr. Etzel was left with the worst of both worlds – a demotion out of the SES that normally requires pay retention, but having the pay reduction apply to her new position. Adding insult to injury, the Board seeks to insulate EPA from review of its actions even though it did not comply with SES regulations in the pay reduction process, calling into question its claim to have acted under those regulations, thereby foreclosing an MSPB appeal.

The Court should not accept the facile claim that EPA's scheme to evade the law through violation, evasion and distortion of the regulatory scheme succeeded in depriving Dr. Etzel of the opportunity to challenge its actions, merely because it managed to keep the label of SES on Dr. Etzel up until a few days before it reduced her pay without compliance with the regulations for doing so. Finding not even a nonfrivolous allegation of jurisdiction here would be a miscarriage of justice.

## CONCLUSION

EPA has not refuted the contentions in Dr. Etzel's Opening Brief that the Board erred in finding that Dr. Etzel's disclosures during her October 2018 television appearances and her disclosure concerning the illegality of her investigative leave were unprotected, that her disclosure concerning the illegality of her pay reduction was not a contributing factor to the adverse personnel action of failing to provide Dr. Etzel sufficient and appropriate duties at the Office of Water, and that the denial of Dr. Etzel's motion to compel discovery responses as untimely was an abuse of discretion.  Thus, the Court should reverse the Board on these matters and remand for a hearing in which EPA must prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of Dr. Etzel's protected disclosures.  In addition, the Court should order the Board to consider Dr. Etzel's motion to compel discovery, and allow her to

receive and review any materials produced as a result prior to hearing and pre-

hearing proceedings.

Finally, the MSPB has failed to support its finding that it lacked jurisdiction

over the pay reduction appeal, and the Court should remand for a hearing in that

appeal.

Respectfully submitted,

/s/ Paula Dinerstein_____
Paula Dinerstein
Peter Jenkins
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
Phone: (202) 265-7337
Email:  pdinerstein@peer.org
            pjenkins@peer.org

Counsel for Petitioner, Ruth A. Etzel

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

I certify that this Reply Brief complies with the relevant type-volume limitations of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it contains 5,887 words based upon the information calculated by Microsoft Word, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). Therefore, it complies with Rule 32(a)(7) of the Federal Rules of Appellate Procedure.

It complies with Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word, 14 point Times New Roman font.

Dated this 4th day of April 2023.


_____*/s/Paula Dinerstein*_____
Paula Dinerstein
Public Employees for
Environmental Responsibility
Attorneys for Petitioner, Ruth A. Etzel